IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHERMAN GARNER,                        )
                                       )
                  Plaintiff,           )
                                       )
v.                                     )        1:05CV00098
                                       )
UNITED STATES OF AMERICA               )
                                       )
                  Defendant.           )
_____ )


MEMORANDUM OPINION

TILLEY, District Judge

        Plaintiff Sherman Garner, proceeding pro se, filed suit against the United

States of America (the "Government") for personal injuries he suffered while a

patient at the W. G. Hefner Salisbury Veterans Affairs Medical Center ("VAMC").

Mr. Garner alleges that the Government was negligent in failing to protect him from

an assault committed by another VAMC patient.  The matter is now before the

Court on Defendant's Motion for Summary Judgment (Doc. # 33) and Defendant's

Motion to Strike References to Settlement Negotiations and Settlement Agreement.

(Doc. # 38).[1]

_____

        [1] Mr. Garner filed a Motion to Deny Summary Judgment and to Deny
Dismissal (Doc. # 36) and a Motion to Deny Truth, and Proof of Settlement Offer,
References, Negotiations and Settlement Agreement Made to Plaintiff by
Defendant, that it Be Not Stricken and Plaintiff's Motion to Deny Dismissal of this
Case (Doc. # 42).  These filings are essentially responses to Defendant's motions
and will be treated as such.

For the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. # 33) is GRANTED and Defendant's Motion to Strike References to Settlement Negotiations and Settlement Agreement (Doc. # 38) is DENIED.

I.

A.

The facts in the light most favorable to Mr. Garner are as follows. In May 2002, Mr. Garner was a patient in the Locked Acute Unit ("LAU") of the VAMC. On May 23, 2002, Registered Nurse Mary McGuire and Certified Patient Care Technician Bea Nesmith were on duty in the LAU. (Doc. # 34, Ex. A, McGuire Decl. ¶¶ 2, 3.) Ms. McGuire and Ms. Nesmith temporarily left the LAU patients unsupervised in the dining room while they were eating dinner that evening. Ms. McGuire went to a nearby room to perform precision checks on diabetic patients. (Id. ¶ 3.) Ms. Nesmith went "out for five minutes" and instructed the patients to "behave." (Doc. # 37, Ex. 5, Garner Dep. at 21.)[2]

During the absence of the VAMC staff on duty, Mr. Garner was hit in the head above his right eye with a hard plastic drinking cup thrown by a fellow LAU patient, James Roberts. (Id. at 22-23.) The incident occurred without notice and happened so quickly that there was not time to react. (Id. at 22; Doc. # 34, Ex. A, McGuire Decl. ¶ 7.) The blow to Mr. Garner's head caused a one and one-half inch

_____

[2] Ms. McGuire contradicts Mr. Garner's account in her Declaration and asserts that Ms. Nesmith remained in the dining room removing trays from the dining cart. (Doc. # 34, Ex. A, McGuire Decl. ¶ 3.)

2

laceration above his right brow, a two centimeter superficial hematoma, and a three inch scratch. (Doc. # 37, Ex. 4, Medical R.) Mr. Garner was treated with two sutures under a local anesthetic and a DT shot, and was prescribed pain medication and antibiotic ointment. (Id.)[3]

B.

Mr. Garner filed an Administrative Claim with the Department of Veterans Affairs on March 3, 2003. The Department of Veterans Affairs issued a final denial of Mr. Garner's claim on July 28, 2004. On February 3, 2005, Mr. Garner filed a Complaint with a jury demand in this Court alleging negligence against: the United States of America; John Ashcroft, the United States Attorney General; Anna Mills Wagoner, the United States Attorney for the Middle District of North Carolina; and the Department of Veteran Affairs. (Doc. # 3.) On March 2, 2006, Defendants John Ashcroft, Anna Mills Wagoner, and the Department of Veterans Affairs were dismissed as parties, leaving the United States as the sole remaining defendant, and Mr. Garner's jury demand was stricken. (Doc. # 19.) The Government filed its Answer on March 10, 2006. (Doc. # 21.)

On December 15, 2006, following discovery, the Government filed a Motion for Summary Judgment. (Doc. # 33.) Mr. Garner responded in opposition on January 4, 2007, with repeated references to a settlement offer made by the

---

[3] Mr. Garner alleges that the May 23, 2002 incident resulted in permanent scaring, permanent hearing loss in his left ear, and permanent injuries to his right eye, head, neck, and back. (Doc. # 37, Pl.'s Resp. Br. at 2-3.)

Government.  (Doc. ## 36, 37.)[4]  On January 19, 2007, the Government moved to

strike all references to settlement negotiations (Doc. # 38) and Mr. Garner

responded in opposition (Doc. ## 42, 43).  These matters are now ripe for

consideration.

II.

Summary judgment is proper only when, viewing the facts in the light most

favorable to the non-moving party, there is no genuine issue of any material fact,

and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(e);

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Cox

v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001).  An issue is

genuine if a reasonable jury, based on the evidence, could find in favor of the non-

moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505,

2510 (1986); Cox, 249 F.3d at 299.  There is no genuine issue of material fact if

the nonmoving party fails to make a sufficient showing on an essential element of

its case as to which it would have the burden of proof at trial.  Celotex, 477 U.S.

at 322-23, 106 S. Ct. at 2552  In essence, summary judgment requires a

determination of the sufficiency of the evidence, not a weighing of the evidence,

and the analysis concerns "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one

---

[4] Mr. Garner filed an additional response in opposition to the Government's
Motion for Summary Judgment on February 20, 2007.  (Doc. # 46.)

4

party must prevail as a matter of law." Anderson, 477 U.S. at 251-52, 477 S. Ct. at 2512.

III.

The United States is immune from suit unless it consents to be sued by waiving its sovereign immunity. See United States v. Testan, 424 U.S. 392, 399, 96 S. Ct. 948, 953 (1976); United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 769 (1941). One of the vehicles by which the United States has consented to be sued is the Federal Tort Claims Act ("FTCA"), which provides a limited waiver of sovereign immunity to suits in tort. 28 U.S.C. §§ 1346(b)(1), 2671-80.; see also United States v. Orleans, 425 U.S. 807, 813, 96 S. Ct. 1971, 1975 (1976). Pursuant to the FTCA, federal courts have exclusive jurisdiction over claims for money damages for:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Accordingly, to establish a claim under the FTCA, Mr. Garner must satisfy the requirements for a negligence claim under North Carolina law. See Williams v. United States, 242 F.3d 169, 173 (4th Cir. 2001) (noting that under the FTCA, "law of the place" refers to state and local law).

To prevail in a negligence action under North Carolina law, Mr. Garner must establish: (1) that the Government owed him a legal duty; (2) that the Government

5

breached that duty; and (3) that his injury was proximately caused by the breach. Martishius v. Carolco Studios, Inc., 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002). A hospital, similar to a proprietor of any public facility, owes a duty to its patients "to exercise reasonable or ordinary care to maintain in a reasonably safe condition that part of the hospital designed for the patients' use." Burns v. Forsyth County Hosp. Auth., Inc., 81 N.C. App. 556, 565-66, 344 S.E.2d 839, 846 (1986) (citing Samuel v. Simmons, 50 N.C. App. 406, 408, 273 S.E.2d 761, 762 (1981)). "It is only when [a] dangerous condition is known to the hospital or should have been known to the hospital that recovery is permitted." Id. at 566, 344 S.E.2d at 846 (citing Revis v. Orr, 234 N.C. 158, 160-61, 66 S.E.2d 652, 654 (1951)). Specifically, with respect to the facts in this case, the VAMC owed Mr. Garner a duty to protect him "against foreseeable assaults by another patient." Id. at 566, 344 S.E.2d at 846-47 (emphasis added); see also Sublin v. Craven County Hosp. Corp., 86 N.C. App. 358, 361, 357 S.E.2d 376, 378-79 (1987).

Mr. Garner alleges that the Government was negligent in failing to prevent the assault that occurred and the resulting injuries he sustained on May 23, 2002 while he was a patient in the VAMC. The Government counters that Mr. Garner has failed to make a sufficient showing that it breached its legal duty. The Government specifically argues that summary judgment is proper because the

6

attack on Mr. Garner was not foreseeable.[5]

Mr. Garner first contends that VAMC personnel were subject to the heightened legal duty of being "in constant attendance" of patients assigned to LAUs. (Doc. # 36, Pl.'s Resp. Br. at 1.) He argues that VAMC staff presence is especially necessary during meal times when patients have access to various items that could be used as "deadly weapons" (i.e., "knives, forks, spoons, glasses"). (Id.) Mr. Garner, however, has failed to cite any authority in support of this alleged duty. See Burns, 81 N.C. App. at 565-66, 344 S.E.2d at 846 (holding that hospitals owe patients a duty to protect them against foreseeable assaults by other patients); Sublin, 86 N.C. App. at 361, 357 S.E.2d at 378-79 (same).

Mr. Garner next contends that the Government knew or should have known of Mr. Roberts' violent propensities. In support of this contention, Mr. Garner points to an argument involving Mr. Roberts that occurred approximately one week prior to the assault at issue in this case. Mr. Roberts got into a heated discussion with several other patients in the VAMC television lounge regarding program choices and the general use of the hospital's amenities. (Doc. # 37, Ex. 5, Garner Dep. at 20-21, 23, 36-37.) Mr. Garner and a VAMC staff member intervened, and

---

[5] The Government has moved to strike all references made by Mr. Garner to settlement negotiations or documents based on their inadmissability under Rule 408 of the Federal Rules of Evidence. In reviewing Mr. Garner's filed documents, the Court has considered all properly admissible information and disregarded information that is inadmissible. Accordingly, the Motion to Strike References to Settlement Negotiations and Settlement Agreement (Doc. # 38) is DENIED.

7

the incident ended without any escalation to or threat of physical violence. (Id. at

21.)

There is a distinct difference between merely disagreeing and arguing with

fellow patients and actually posing a risk of danger. Despite the argument that

occurred in the television lounge, there is simply insufficient evidence to establish

that Mr. Roberts was a known threat to the safety of the other patients. In fact,

Mr. Garner's deposition testimony tends to show the opposite. First, Mr. Garner

never got into an argument with Mr. Roberts and even considered Mr. Roberts to

be "a very nice person." (Id. at 21, 35, 37.) Second, and more telling, Mr.

Roberts exhibited considerable restraint by walking away from the hostility he

faced during the confrontation in the television lounge without resorting to any

physical violence.

Further, if a patient is considered to have violent propensities, the VAMC has

procedures in place to ensure that other patients are not exposed to danger. (Doc.

# 34, Ex. A, McGuire Decl. ¶ 6.) Specifically, if a patient is considered to be

unstable, dangerous, or a threat to other patients, the matter is referred to a doctor

for a determination whether a transfer to the Psychiatric Intensive Care Unit

("PICU") is warranted. (Id.) In this case, Ms. McGuire was not aware of any

reports or information that indicated that Mr. Roberts posed a threat to any other

patient. (Id.) In fact, at the time Mr. Roberts committed the assault, he was being

processed for discharge from the VAMC and was assigned to the LAU because a

8

doctor had specifically determined that he was not in need of special psychiatric care through the PICU.  (Id.)

In sum, Mr. Garner has failed to establish that the assault by Mr. Roberts was foreseeable.  The Government, therefore, did not breach its legal duty and is entitled to judgment as a matter of law.

IV.

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. # 33) is GRANTED and Defendant's Motion to Strike References to Settlement Negotiations and Settlement Agreement (Doc. # 38) is DENIED.

This the day of March 1, 2007


                                          /s/ N. Carlton Tilley, Jr.
                                         United States District Judge

9